CARL, APPELLANT, *v.* SHAFFER, ADMX., APPELLEE.
(Two cases.)
CALDWELL, ADMX., APPELLANT, *v.* SHAFFER, ADMX.,
APPELLEE.

340

(Nos. 3889, 3890 and 3891—Decided May 25, 1942.)

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellants.

*Mr. Rodney B. Baldwin* and *Mr. Harry S. Bugbee,* for appellee.

LLOYD, J. The three above captioned actions were based on distinct and unrelated causes of action and therefore could not and were not consolidated, and, although by consent of counsel and apparently at the request of counsel for plaintiffs, they were for convenience tried together, the trial judge submitted them to the jury as separate actions and so instructed the jury in his general charge.

A casual reading of the petitions of the plaintiffs would, it would seem, have at once suggested the difficulties inevitably arising from trying to try these actions together.

Vida Carl in her petition sought to recover a judgment for personal injuries alleged to have been sustained by her and also for damage to her automobile. Her mother, Kate Carl, petitioned for damages for alleged personal injuries.

The petition of the administratrix of the estate of Jane Caldwell, deceased, contained two causes of action, one for the wrongful death of Jane Caldwell who died October 16, 1941, the other for damages to her and to her estate during the intervening time between October 10th, the date of the automobile collision out

of which the causes of action of the plaintiffs arose, and the date of her death. So there were in reality four actions submitted for trial together, instead of separately. This court has heretofore held that the joinder of two causes of action, one for the benefit of the estate and the other for the ensuing death of the decedent, is improper and objectionable.

The trial court in his direction to the jury as to the form of verdict in this case said:

"If you find damages on the first cause of action and on the second, you will add those two figures together and show one figure on the verdict; that is in case you find in favor of the plaintiff Bertha Caldwell under the instructions I have given you and the evidence here which you have heard."

Three separate verdicts and judgments were returned and entered in favor of the defendant. From these judgments the plaintiffs severally appeal on questions of law.

The collision occurred at the intersection of the "Chicago pike" and "Reynolds road" in Lucas county between the automobile of Robert M. Shaffer, proceeding in an easterly direction on the Chicago pike, and the automobile of Vida Carl operated at the time of the collision by a Miss Naudett, proceeding in a southerly direction on Reynolds road, which intersects Chicago pike at right angles.

The Shaffer car, as it approached the intersection, was to the right of the Carl automobile. As stated in the brief of plaintiffs, each of them in her petition "claimed that defendant's decedent, Robert M. Shaffer, was negligent in two chief respects: 1. speed in excess of sixty miles an hour; 2. in running the red light."

The answers of the defendant consisted of a general denial and a plea of contributory negligence. With its general verdict in favor of the defendant, the jury, in response to the interrogatory, "What color was the

traffic light which faced toward Robert M. Shaffer at the time he drove into the intersection of Chicago pike and Reynolds road," answered "green." And here we may say that the evidence was such as to warrant this finding which would, if Shaffer was proceeding in a lawful manner, accord to him the statutory right of proceeding uninterruptedly across the intersection.

In his brief, counsel for plaintiffs say that Jane Caldwell, of whose estate Bertha Caldwell is administratrix, Vida Carl and Kate Carl "were at the time of the collision, guest passengers in a car driven by Hazel Naudett; Vida Carl owned the automobile but she had surrendered complete control of it to Hazel Naudett and was sleeping at the time of the collision. There was no agreement to share expense. Vida Carl paid the expense and the four went dutch as to other expenses. Jane Caldwell and Mrs. Carl did not drive and Vida Carl and Hazel Naudett did all the driving, each relieving the other from time to time."

The evidence supports this statement of counsel, except the conclusion that Vida Carl was a guest passenger.

The plaintiffs assign as prejudicial error that the judgment is not sustained by sufficient evidence; error of the trial court in the admission of evidence; error in its general charge on the subject of contributory negligence; error in disqualifying Vida and Kate Carl as witnesses; and misconduct on the part of counsel for the defendant.

The evidence is such as to eliminate from consideration the first alleged error.

A witness called by defendant testified that after the collision she observed that the needle of the speedometer in the Carl car was "perfectly still" and pointed to "between 65 and 70 per hour." Objection was made to this testimony on the ground that it was "wholly immaterial." Counsel strenuously argue that

this evidence was inadmissible and cites in support thereof *Geason* v. *Schaefer*, 229 Wis., 8, 281 N. W., 681; *Jones* v. *Traver*, 275 Ill. App., 181; *State* v. *Benton*, 209 N. C., 27, 182 S. E., 690.

This testimony, if admissible, would bear on the issue of the negligence of Miss Naudett and incidentally on the contributory negligence, if any there was, of Vida Carl.

The next assignment of error relates to the refusal of the court to permit Vida Carl and Mrs. Carl, her mother, to testify because of the inhibition of Section 11495, General Code. Mrs. Carl was qualified to testify in the Vida Carl case; Vida Carl in her mother's case, and both of them in the Jane Caldwell case. Neither counsel for the plaintiffs nor for the defendant called the attention of the court to this situation, and counsel for the plaintiffs said:

"Now, Miss Carl, I am going to ask a question and please do not answer it until you are directed to do so or not directed to do so to the question then asked"

Counsel for defendant, without stating the ground thereof, objected, and the court, without comment, sustained the objection. Counsel for plaintiffs then requested the court to "explain to the jury why it is, under the law, that neither Miss Carl nor her mother may testify to any facts or occurrences until after the death of Mr. Shaffer." This, the court, referring to the statute, did.

In view of the combination of lawsuits in which the issues differed and to which the rules of evidence had a varying application, and the consequent confusion resulting therefrom, it seems a sensible conclusion that the trial judge should have been advised by counsel proffering the witnesses as to the applicability and limitations of their testimony. Judges, of course, are supposed infallibly to know the law independently of counsel's advice and assistance, but the instant situa-

tion, created by the procedural method of trial adopted and permitted, called for something more than the silent acquiescence which invited the ruling made, and counsel therefore can not now complain of an error, discovery of which apparently was an afterthought.

The misconduct of opposing counsel, of which plaintiffs complain, is that on two occasions—first at the conclusion of the plaintiffs' evidence, and again by renewal thereof at the close of the defendant's evidence—they requested the court to permit the jury to view the place of the collision, both of which requests made in the presence of the jury were denied by the court. Counsel for plaintiffs could have requested the trial judge either in open court or at the bench to advise the jury that what a view of the premises might disclose was not and could not be considered as evidence, and his reason for denying the request; and this court is of the opinion that a request to permit a view of the premises, the granting of which is discretionary, is better not made in the presence of the jury and more properly made at the beginning of the trial. There might well be situations where repetitions of such a request, in the presence of the jury, if denied, would be prejudicial error. If, in the instant case, the bill of exceptions contained the arguments of counsel wherefrom it appeared that counsel for plaintiffs made no reference thereto in argument or a stipulation of counsel or finding of the court to that effect, this court would say that the statement of one of counsel for defendant in his argument that "we should have liked to take you to the scene of the accident but unfortunately we were unable to do this," in conjunction with the making and denial in the presence of the jury of the requests of the defendant for a view of the premises where the collision occurred, would constitute prejudicial error.

Plaintiffs claim that the only issue in these cases was whether the defendant was negligent and, if so, was that negligence the proximate cause of the injuries to Mrs. Carl and her daughter and of the injuries to Jane Caldwell and her consequent death, and there being, it is urged, no evidence of contributory negligence, that the trial court erred to the prejudice of the plaintiffs in charging the jury on that subject. So far as Vida Carl is concerned, any negligence of Miss Naudett would, under the evidence, be imputable to her as a matter of law. Mrs. and Miss Carl, Jane Caldwell and Miss Naudett in the Vida Carl automobile, left Vancouver, British Columbia, on October 1st, bound for Ottawa, Ontario, and after driving "roughly 2,600 miles," arrived in Chicago on Tuesday, October 8th, where they remained overnight and until eight p. m. on Wednesday, spending that day "sight-seeing and window-shopping." Leaving Chicago at eight p. m., Miss Carl drove until 1:30 a. m. Miss Naudett says that during this time she "was dozing, and when roused" by the stopping of the automobile, Miss Carl told her that she had stopped to conserve gasoline, none being obtainable until the gas stations opened in the morning. "So we drove off the road into a closed gasoline station" and remained there until 3:30 central standard time and Miss Naudett further says that at about 4:15 she "took over the driving." She testified that Mrs. Carl was sitting beside her in the front seat and that Vida and Jane Caldwell were in the rear seat, and that they were thus seated at the time of the collision, which occurred, she says, about six o'clock. While Miss Carl was driving, the others "dozed or slept because there wasn't a thing to do but look out into the darkness." At the time of the collision, Mrs. Carl and Vida were sleeping and Miss Caldwell "too was dozing or sleeping," but according to Miss Naudett, she herself was

"very much" awake. She testified also that when about a quarter of a mile therefrom, proceeding at a speed of "approximately 45 miles an hour" she saw the traffic light at the intersection showing red and "slowed up to approximately 35 miles an hour"; that when "approximately 300 feet" from the intersection the traffic light turned green and continuing green, she drove on into the intersection; that when a quarter of a mile therefrom, she "very distinctly" saw the two headlights on the Shaffer car which was approaching to her right on the Chicago pike, further away she estimated, from the intersection than she was, and that at the time and just before the collision it was, in her opinion, going at a speed of "60 or 65 miles an hour." The evidence is in conflict as to whether at the time of the collision the traffic light was green for the Shaffer car or for the Carl car, and the jury found that the green light was beckoning Shaffer to proceed.

The jury, by its general verdict, either found Shaffer not negligent or that the Carls and Miss Caldwell were guilty of contributory negligence. Ordinarily, unless there are circumstances from which a contrary finding could reasonably be reached, sleeping or dozing of an occupant of an automobile driven by another can not be said to be contributory negligence, but in the instant cases, after continuous travel covering 300 or more miles a day for a period of seven or eight days, after which, with comparatively little rest, the journey was continued in the night time over a route with which, from the evidence, it may be inferred the Misses Naudett and Caldwell and the Carls were not familiar, it would seem and this court holds that the sleeping or dozing of Miss Caldwell and the Carls, at the instant of and preceding the collision, under the facts and circumstances in evidence, justified and required the submission to the jury of the pleaded issue of contributory negligence, and that the trial court did not err in so doing.

The verdicts being general and not inconsistent with the finding of the jury on the submitted interrogatory, and no prejudicial error occurring in the trial as to the issue of the negligence of Shaffer, the judgments are affirmed.

*Judgments affirmed.*

OVERMYER and CARPENTER, JJ., concur.

(Decided June 8, 1942.)

ON APPLICATION for rehearing.

LLOYD, J. The plaintiffs Carl, and Bertha Caldwell, as administratrix of the estate of Jane Caldwell, have filed an application for a rehearing herein, stating therein that this court failed to consider or mention the error alleged in the motion of plaintiffs for a new trial that the trial court refused a request of the jury "whether they might have the evidence or the transcript of the evidence as presented by Fred Tippen" transmitted to the trial judge by the bailiff. The court advised attorneys representing the respective parties as to this request, stating that he did not think it should be granted. They acquiesced in this decision and neither of them objected or excepted or requested that the court comply with the request. Regardless of the propriety of the request or whether the court should have acceded thereto, this court was of the opinion that under these admitted facts it was plainly evident that no prejudicial error was committed by the trial court; that specific mention thereof was patently unnecessary, especially since the last paragraph of the opinion expressly stated that the judgments of the Court of Common Pleas were affirmed because no prejudicial error occurred in the trial as to the issue of the negligence of the decedent Shaffer. The phrase

"no prejudicial error" is all-inclusive. This court is not convinced that every assigned error for the reversal of a judgment must be specifically mentioned in the written opinion of the court when the judgment is affirmed, any more than each letter in a word must be separately discussed before the word may be pronounced. This court does not consider it necessary to discuss errors deemed inconsequential and unimportant, nor in the judgment of this court is its decision on this assigned error in conflict with that cited by counsel in their application for a rehearing.

Counsel complains also that a reversal of the judgment was not ordered as should have been done because of what this court said in its opinion as to the alleged misconduct of counsel. This court in an appeal thereto on questions of law is confined to a consideration of what appears in the record of the trial. The burden is upon counsel to maintain assigned errors and must do so from the record made at the trial. This court is still of the opinion that what was said in its original opinion is sufficient explanation of the attitude of the court as to this alleged error. It may be suggested that counsel may request that the court reporter take the arguments of counsel and may thereafter incorporate them in a bill of exceptions, or, if inconsequential, omit them therefrom. Nor has the court changed its opinion as to what has heretofore been said as to the effect of the testimony of the "speedometer" witness.

The applications for a rehearing are therefore denied.

*Rehearing denied.*

OVERMYER and CARPENTER, JJ., concur.