CAMPBELL, APPELLEE, *v.* MARQUIS, APPELLANT.[*]

*[*]Motion to certify the record overruled, July 6, 1960.

51

(No. 206—Decided March 7, 1960.)

*Mr. Arlo Chatfield* and *Mr. Benson L. Owens,* for appellee.
*Messrs. DeLay & DeLay,* for appellant.

RADCLIFF, J.   The parties will be referred to throughout this opinion as they appeared in the trial court.   Gould Denny Campbell, the appellee in this court, was the plaintiff in the trial court, and Gilbert Leland Marquis, the appellant herein, was the defendant.   The defendant is married to a sister of the plaintiff, and the families have been friends for a number of years.

In May of 1956 both the plaintiff and defendant had been furloughed from their place of employment in the city of Wellston.   On Monday, May 14, 1956, the plaintiff and defendant left Wellston to go to Dayton, Ohio, to seek employment.   At the time the trip started, it was agreed to use the car owned by the defendant as it was a later model than the car owned by the plaintiff.   It was also agreed, at least there is evidence to this effect, that the plaintiff was to share the cost of the gasoline and oil, to do some of the driving and to make his car available to the defendant's wife for errands in and around Wellston.   The two men drove to Dayton, Ohio, but were unable to find employment there.   They learned of a pipeline construction project

near the city of Troy and decided to try to obtain employment there. It appears that the plaintiff had previously worked for the contractor who was making the installation near Troy. Both men were successful in getting employment on the pipeline construction crew at Troy. There is some indication from the testimony that the plaintiff was instrumental in getting the defendant a job as he had disclosed to his employer that the defendant was furnishing the transportation. The plaintiff and defendant drove back to Wellston that evening to get their work clothes and informed their families what had transpired.

On Tuesday, May 15, the plaintiff and defendant drove from Wellston to Troy and worked that day. There is conflict in the testimony as to whether they returned to Wellston the night of the 15th or whether they stayed in Troy at a boarding house. On Wednesday, the 16th of May, they worked all day and drove to Wellston, spending the night there, and returned to Troy early in the morning on May 17. They worked that day and spent the night of the 17th in Troy at a rooming house. Both men worked all day Friday the 18th and drove to Wellston that night. On Saturday, the 19th, they drove back to Troy early in the morning and worked that day. They had expected to work on Sunday but were informed that there would be no work on Sunday, so they decided to drive back to their homes in Wellston on Saturday evening, the 19th of May.

The plaintiff being assigned a job that required longer hours than those of the defendant did not get off work until 7:30 p. m. Saturday. The plaintiff and defendant then had two or three hours which they spent on the town in Troy. During that time, the plaintiff had his dinner and they visited two bars and had a few beers and at least one drink of something stronger, then hamburgers and coffee. They left Troy for Wellston at about 11:30 p. m. Saturday. The plaintiff got in the back seat of the car and went to sleep. The defendant drove to Dayton and there tried to arouse the plaintiff to ask him to drive. He was not successful in waking him. The defendant parked his car and endeavored to get some sleep himself but was unable to do so. The defendant then drove on to Xenia and just beyond Xenia he wakened the plaintiff and asked him to drive. The plaintiff told him to go on as he was doing satisfactorily and

went back to sleep. The defendant drove on and, a few miles southeast of Xenia, Ohio, on U. S. Route 35, had an accident which resulted in rather serious injury to the plaintiff.

The plaintiff sued the defendant in the Common Pleas Court of Jackson County, Ohio. The issues were made up by the third amended petition of the plaintiff, wherein he alleges that he was a paying passenger in the car being driven by the defendant, that the defendant was negligent, and that as a result of this negligence the plaintiff was injured and incurred medical bills to the extent of $1,100, and he concludes with a prayer for damages in the sum of $36,100. The answer to the third amended petition alleges that the plaintiff was a guest in defendant's automobile, admits that the defendant was driving, that there was an accident, and that the plaintiff was injured, then denies generally all other allegations not admitted. The reply denies that the plaintiff was a guest in defendant's automobile.

The case was tried to a jury, and a verdict of $10,000 in favor of the plaintiff resulted. After disposition of the motion for a new trial and for judgment notwithstanding the verdict, the defendant perfected his appeal to this court.

The defendant urges nine assignments of error but as pointed out in his brief there are only four questions involved. The answers to these four questions will be dispositive of all the assigned errors. The four questions are:

1. Was the plaintiff a paying passenger or a guest?

2. Was the defendant negligent?

3. Was the plaintiff guilty of contributory negligence?

4. Were the damages excessive or influenced by the injection of insurance into the case?

The first question is whether the plaintiff was a guest in the defendant's car as contemplated by Section 4515.02, Revised Code, or was he a passenger for pay? The importance of this is elemental, as the duty the driver of a car owes to a passenger is entirely different from the duty the driver of a car owes to a guest. The evidence as to the presence of a contractual relationship between the plaintiff and defendant is of course in dispute, but it does raise an issue of fact which should be submitted to the jury under proper instructions. The test that is to be applied in cases of this kind is best set forth, as follows,

in the second paragraph of the syllabus of *Birmelin, Admx.,* v. *Gist, Admx.,* 162 Ohio St., 98, 120 N. E. (2d), 711:

"In such case, a mere offer by the rider to pay for the gasoline on a trip or to furnish some other reciprocal favor for the accommodation of the ride does not furnish the basis for a contractual relationship, unless there is evidence that such payment or furnishing formed the basis of such a contractual arrangement as would give the owner or driver a right to recover in an action at law on the offer made by the rider."

It seems to us that the evidence here warranted the submission of this question to the jury under proper instructions. This view we feel is consistent with the attitude of the Supreme Court as found in the following recent cases: *Lombardo* v. *De Shance, a Minor,* 167 Ohio St., 431, 149 N. E. (2d), 914, 66 A. L. R. (2d), 1313; *Lisner, a Minor,* v. *Faust,* 168 Ohio St., 346, 155 N. E. (2d), 59; and *Redis, a Minor,* v. *Lynch,* 169 Ohio St., 305, 307, 159 N. E. (2d), 597. The following recent cases of courts inferior to the Supreme Court are cited: *Sprenger* v. *Braker,* 71 Ohio App., 349, 49 N. E. (2d), 958; *Galliher* v. *Campbell,* 69 Ohio Law Abs., 378, 125 N. E. (2d), 758; and *Elfers* v. *Bright,* 108 Ohio App., 495, 162 N. E. (2d), 535. We also cite 6 Ohio Jurisprudence (2d), 447, Section 224. An examination of the above authorities leads us to the conclusion that there was an issue of fact raised by the evidence herein that was properly submitted to the jury. The jury having determined that the plaintiff was a passenger for pay rather than a guest, we can find no reason to disturb that finding. The answer to the first question is that the plaintiff was a paying passenger.

The second question as to the defendant's negligence confronts us with the always troublesome question of the doctrine of *res ipsa loquitur.* It is well to start with the fundamental statements of the doctrine as it is applied in Ohio. Such a statement was succinctly made, as follows, by Chief Justice Marshall in *St. Marys Gas Co.* v. *Broadbeck, Admr.,* 114 Ohio St., 423, 433, 151 N. E., 323:

"It is not a substantive rule of law, and never under any circumstances may it become the ground of a directed verdict. It is a rule of evidence which permits or requires the inference of negligence where an accident occurs under circumstances

where, in the ordinary course of events, such accidents do not occur. It is at best an evidential inference and not binding upon a jury, but to be considered by it under proper instructions. The weight of the inference as well as the weight of the explanation is for the determination of the jury.''

This doctrine has been applied to situations, such as the one before us, in *Glowacki, a Minor,* v. *North Western Ohio Ry. & Power Co.*, 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486; *Collins, a Minor,* v. *McClure*, 143 Ohio St., 569, 56 N. E. (2d), 171; *Manker* v. *Shaffer*, 161 Ohio St., 285, 118 N. E. (2d), 641; *Lombardo* v. *De Shance, supra.* The following additional references were found to be helpful: 4 Ohio Jurisprudence (2d), 339, Section 1029; and *Sprenger* v. *Braker, supra.*

The defendant complains that the language employed in plaintiff's requested special charge No. 2 and the court's general charge on the question of the defendant's negligence is too broad and is tantamount to the court's usurping of the function of the jury. Although it adds to the length of this opinion, it is necessary to include both the special charge and the portion of the general charge concerned.

The special charge reads:

''That, if you find from the pleadings and the evidence that the automobile driven by the defendant, Gilbert Leland Marquis, at the time and place alleged in the petition, was under the exclusive management and control of said defendant Marquis, and that his automobile left the highway under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed, and that the plaintiff, Gould Denny Campbell, was injured as proximate result thereof, those facts justify an inference of negligence, and the fact of the accident and the injury itself affords sufficient evidence to support recovery by Gould Denny Campbell, where the defendant fails to show that the injury did not result from his want of care.''

The pertinent paragraph of the general charge reads:

''In considering whether or not ordinary care was used in the case, you may consider all of the circumstances preceding and surrounding the accident in this case as shown to you by the evidence. In this regard, however, let me say to you that in this case, if it is shown by the evidence that the defendant was in sole

control and management of the automobile, and the accident occurred under circumstances wherein the ordinary course of events it would not have occurred if ordinary care were used, then it is reasonable for you to infer in absence of a satisfactory explanation by the defendant, that he did fail to exercise the proper care in his operation of the motor vehicle, thus resulting in the accident and subsequent injuries to the plaintiff.''

It is to be noted that both the trial judge in his general charge and the plaintiff in his requested special charge used the term, ''inference'' or ''infer,'' and avoided the pitfall set forth in *Collins* v. *McClure, supra.* The special instruction goes almost too far but not quite to the point of being erroneous. We feel that the question of the defendant's negligence was an issue of fact that was properly presented to the jury, and, the jury having reached a conclusion, there is nothing in the record or the trial court's instructions that requires us to disturb that conclusion. The answer to the second question is yes.

The third question raises the possibility of contributory negligence on the part of the plaintiff because he was asleep in the back seat of the car. In a case which originated in Jackson County, *Hocking Valley Ry. Co.* v. *Wykel, Jr., a Minor,* 122 Ohio St., 391, 171 N. E., 860, the Supreme Court first spoke on the question of contributory negligence on the part of an occupant of an automobile who is not the driver. That case was decided before the passage of the so-called guest statute but states the general principle very well. The syllabus of that case reads as follows:

''One riding as a guest in an automobile does not assume the responsibilities of the driver, and the driver's negligence may not be imputed to him. He is required to exercise that care for his own safety which persons of ordinary care and prudence are accustomed to exercise under the same or similar circumstances, and that test should be applied in an action wherein he seeks to recover damages for injuries sustained in a collision of such automobile and a railroad train at a grade crossing.''

The most recent application of the doctrine to a situation comparable to ours is found in *Ricks* v. *Jackson,* 169 Ohio St., 254, 159 N. E. (2d), 225, attention being directed to the first two

paragraphs of the syllabus. The defendant cites in support of his proposition that the plaintiff was guilty of contributory negligence the cases of *Carl* v. *Shaffer*, 71 Ohio App., 339, 50 N. E. (2d), 182, and *Ransom* v. *Feeney*, 81 Ohio App., 7, 76 N. E. (2d), 908. We feel that those cases are distinguishable on the facts from the one before us. It would be well to examine the annotation in 44 A. L. R. (2d), 253, for an excellent discussion of the import of the *Ransom case*.

We conclude that the issue of contributory negligence was not raised by either the pleadings or the evidence in this case, and the trial court properly refused to charge thereon.

We now come to the question of damages as affected, first, by the possible injection of the insurance question into the case. On the *voir dire* examination there was no impropriety in the questions asked of the prospective jurors and even if there had been this urged error would have been waived because the defendant did not object to any of the questions concerning the possible ownership of stock in insurance companies nor did he make any general objection at the conclusion of the *voir dire* examination. The defendant urges that insurance was again injected improperly into the case in the plaintiff's special instruction No. 10 which reads as follows:

"Members of the jury, I now instruct you as a matter of law that in your deliberations on this case when it is finally submitted to you, that in event you come to the question of damages for evaluation and determination, that you shall not either enhance or diminish the amount you find, if any, established by a preponderance or the greater weight of the evidence by any considerations of your beliefs or feeling with reference to the ability of the defendant to pay for said damages."

The plaintiff relied upon a reference in Ohio Jurisprudence (2d), to the effect that it is proper to admonish the jury that in the eyes of the law there is no inequality. Before the law the rich and poor stand equal as do the arrogant and the humble. Had there been an undue amount of emphasis on the question of insurance in the *voir dire* examination or in the record of trial itself this might have been questionable due to the accumulative effect, but we do not feel that standing alone as it is that it was erroneous. See 4 Ohio Jurisprudence (2d), 226, Section 973, and 6 Ohio Jurisprudence (2d), 665, Section 389.

As to the other facet on the question of damages, namely, are they excessive, we feel that they are not. The amount is well within the prayer of the third amended petition. There was no evidence introduced to refute the seriousness of the injury to the plaintiff or the probability of it being permanent. In this connection we suggest an examination of the case of *Flory, Admr.,* v. *New York Central Rd. Co.,* 170 Ohio St., 185, 163 N. E. (2d), 902.

We conclude that the damages are not excessive, and that the question of insurance did not become involved in this case.

We have resisted the temptation to make some advisory observations throughout this opinion. We can no longer refrain from it. Our profession should keep in mind that the right conferred by Section 2315.01 (E), Revised Code, arms a litigant with a two-edged weapon capable of inflicting great harm on both the target and the one wielding the weapon. It should be used only with restraint and skill. Our profession should also keep in mind the doctrine of *Taft* v. *Wildman,* 15 Ohio, 123, *Jones* v. *State,* 20 Ohio, 34, and *Columbus Ry. Co.* v. *Ritter,* 67 Ohio St., 53, 65 N. E., 613, to the effect that "to omit is human but to commit is to err."

It follows from what we have said in answering the four questions suggested in the defendant's brief that the nine urged assignments of error are not well taken, and that the judgment herein appealed from should be, and hereby is, affirmed.

*Judgment affirmed.*

GILLEN, P. J., and COLLIER, J., concur.